# EXHIBIT CC

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Elliott Ambrosio and Sierra Trenholm, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>Progressive Preferred Insurance Company and Progressive Advanced Insurance Company,<br><br>                    Defendants. | Civil Action: 2:22-cv-00342-PHX-SMB |

**RULE 26(a) EXPERT REPORT OF JASON MERRITT**

I, Jason Merritt, pursuant to Federal Rule of Civil Procedure 26, declare as follows:

**I.   Declaration**

This Report is based on personal knowledge and, if called to testify on the matters set forth herein, I could and would do so competently.

**II.   Introduction**

My name is Jason Merritt, and I am a professional personal-property appraiser who has been retained by the Plaintiffs in this case. My credentials and professional experience are described in my curriculum vitae enclosed with this report as **Exhibit 1**.

Pertinent to this report, and as reflected in my curriculum vitae, I am the owner of East Coast Auto Appraisers, LLC. I am certified through the Bureau of Certified Auto Appraisers to appraise vehicles, including total losses. I have appraised over a thousand vehicles to determine their fair market, or actual cash, value. These appraisals include hundreds of appraisals where I was hired to determine the value of a totaled vehicle. As owner of Merritt's Automotive, LLC, I appraised vehicles daily for the purpose of determining the fair market value. Additionally, I have

performed hundreds of appraisals for the Timbrook Automotive Organization, which includes franchise dealerships for Chevrolet, Buick, GMC, Kia, Nissan, Ford, Chrysler, Dodge, Jeep, and Honda. The purpose of these appraisals was to determine the fair market value of vehicles offered for trade in or that were newly acquired by the Timbrook Automotive Organization.

Before entering the private sector, I served in the Maryland State Police for 28 years. During those years, I received advanced training in accident investigations. In 1998, I was assigned to the C31 Narcotics Unit of the Maryland State Police. Part of my duties in that unit were acquiring and maintaining the unit's vehicles.

III. **Scope of Work**

I have been hired by the Plaintiffs in this case to offer opinions on the following topics:

- Description of what an appraisal is;
- Explanation of how to use the comparable methodology to appraise a vehicle's actual cash value; and
- Explanation of whether Mitchell's use of a Projected Sold Adjustment ("PSA") is appropriate when appraising a vehicle using a comparable methodology.

IV. **Opinions**

**A. Overview of Using a Comparable Methodology to Determine the Pre-Loss Actual Cash Value of an Automobile.**

An *appraisal* is an opinion of value. While there is no single methodology to arrive at a proper opinion as to a vehicle's actual cash value ("ACV"), there are generally accepted methodologies that must be followed to render a sound opinion as to ACV. One such methodology—applicable to standard motor vehicles, as opposed to, for example, antique cars or specialized vehicles—is the comparable methodology, more frequently called the "comp" methodology.

Generally, the comp methodology for determining ACV involves finding vehicles for sale, or recently sold, within a certain geographic area that are similar, or "comparable," to the vehicle being valued. Typically, these comps are selected from Internet advertisements. Once the comps are chosen, differences in observed and verifiable features (such as options, mileage, trim level, and condition) between the loss vehicle and the comps are documented. Normally, information concerning options, mileage, trim level, and condition are taken from the Internet advertisement for the vehicle, and these characteristics are taken at face value unless there is some specific and documented reason for questioning the accuracy of the listing. Sometimes a vehicle listing does not include options, but these could be determined using a VIN decoder. The point is that there must be a specific reason, grounded in evidence, for varying from the information provided in an Internet advertisement for a particular vehicle. Differences between vehicles in observed and documented characteristics result in price adjustments from the list price of the comparable vehicles.

I have reviewed the Vehicle Valuation Report Mitchell prepared for Plaintiff Ambrosio and Plaintiff Trenholm. On the last page of each of the reports, under the header "Vehicle Valuation Methodology Explanation," Mitchell walks through the general steps of the comp methodology. Having reviewed the reports it also appears that Mitchell largely followed this methodology, documenting all differences, if any, in mileage, options, trim level, condition, etc., and making monetary adjustments based on those documented differences.

When adjusting for the condition of a vehicle, the common procedure is to adjust the condition of a loss vehicle by comparing it to the normal or typical condition of similar vehicles. Ideally, you would search for comparable vehicles in nearly identical condition to the loss vehicle, but this usually isn't practical. Mitchell followed customary condition-adjustment standards.

Specifically, in the Reports, Mitchell documented an inspection of 13 components of each Plaintiff's loss vehicle. These components are assigned a numerical rating of 1 to 5. Each component is compared to a "Typical Vehicle Condition," which was assigned a numerical rating of 3.00. So, based on whether the "Overall Condition" of the loss vehicle rated above or below the typical 3.00, Mitchell adjusted the base value of the loss vehicle to reflect that it was in better or worse condition than "typical." As for the condition of the comparable vehicles, it would be improper to assume they were in anything other than typical condition without either inspecting the vehicle or having documentation showing the comparable vehicle was in better or worse than typical condition. Because conducting physical inspections of comparable vehicles is often impractical, appraisers usually set the condition of the comparable vehicles as "average" or "typical" and make no monetary adjustment to the comparable vehicle, which is what Mitchell did in the Comparable Vehicles section of the Reports. Once the average price is established—the average of the comparable vehicles' prices, adjusted for any differences in mileage and equipment—the average price is adjusted upward or downward if the insured vehicle is in better or worse than typical condition, and kept the same if it is in typical condition.

Generally, Mitchell's methodology is consistent with the comparable methodology routinely applied by appraisers and is capable of producing a correct or sound appraisal of ACV. Mitchell deviated from the comp methodology, however, by applying a PSA deduction to the Internet prices of the specific comparable vehicles advertised for sale.

### B. Mitchell's Application of a Projected Sold Adjustment is Inconsistent with Appraisal Standards and the Comparable Methodology.

As with mileage, options, and equipment, appraisers must base their opinions about a specific comparable vehicle's price on hard data. The hard data appropriate for this is typically the Internet price of the comp. This is true for several reasons.

4

*First*, the Internet price is often the only data point concerning what a particular vehicle listed with a particular seller would sell for at the time of valuation. When determining ACV, the objective is to determine the value of that vehicle at a particular point in time. The Internet price listed for sale is the only evidence available for determining what a particular comparable vehicle offered for sale by a particular dealer would sell for on a particular day. Moreover, using the Internet price provides an objective criterion for determining what the comparable vehicle would sell for on a particular day to a buyer purchasing a vehicle outright, without providing a trade in, financing the purchase through the dealership, or buying optional warranties or service plans. These additional profit opportunities for the dealer might result in what may look like a lower sales price but does not reflect a change in the market value of that car or that the dealer would have accepted anything other than the list price had the buyer offered cash for the vehicle, without the opportunity to make up the difference or make even more profit related to a trade-in vehicle, financing of the purchase, or selling warranties, service plans, or other products. For this reason, while it is not necessarily invalid to use a reported sale price of a comparable vehicle, it is generally better to use a list price, unless the appraiser is able to confirm the reported sale price is not the result of a special discount and does not reflect ancillary items relating to the purchase.

*Second*, appraisal standards do not permit arbitrarily deducting the advertised price of a vehicle based on projections of what that vehicle might ultimately sell for. Again, there is no hard data available to an appraiser to support an opinion that a particular comp would sell on a particular day for anything other than the Internet price. It would be arbitrary to assign a different sales price to any particular vehicle chosen for comparison purposes.

Using the advertised price as the price for a comparable vehicle is especially important when the advertisement comes from an Internet source. It is my understanding that Mitchell uses

5

only Internet listings for locating comparable vehicles. Consistent with Mitchell's "Position on Internet Pricing," my understanding of the modern used-car market is that Internet prices often reflect a no-hassle price and that dealers price their inventory competitively to move inventory and sell more vehicles. This is another reason appraisers cannot assume a vehicle will sell for anything other than its advertised price.

While I do not, there are some appraisers who make a "take-price" adjustment to the Internet price of comparable vehicles. This adjustment is made only after speaking with the specific car dealership offering that particular vehicle for sale to determine whether the dealer would take anything other than the advertised price of the specific vehicle. The adjustment is specific to a particular vehicle from a particular dealer, and the recipient of the appraisal would know that dealer stated it would take a specified cash price on that day for that particular comparable vehicle. As with other adjustments, a "take-price" adjustment would be based on data specific to a comp vehicle.

Based on my understanding of the Mitchell PSA methodology, it is not an appropriate basis for adjusting the list price. First, it is not information about the particular comp in question – no effort is made to contact the specific dealer about whether it will sell the specific comp for less than advertised at the time of the valuation. Second, no effort is made to account for the other profit centers and considerations discussed above—like trade ins, in-house financing, warranties, service plans, special discounts—that impact recorded sales amounts but not ACV. Without accounting for those factors, the data is not helpful. Third, it is my understanding based on conversations with counsel that Mitchell does not consider all the transactions. More specifically, Mitchell does not consider transactions where the vehicle sold for the advertised price and has never considered transactions where the vehicle sold for more. Even setting aside the other

problems with attempting to predict what a particular comp will ultimately sell for, I would not rely on Mitchell's PSA calculations because excluding this data slants toward lower values and is not objective.

### C. Absent the PSA Deduction, the Mitchell Methodology Provides a Sound Determination of ACV.

Overall, while it is unlikely I would have, starting from scratch, selected the exact comparable vehicles used in the report and appraisers generally do not select precisely the same vehicles to use for comparison purposes, Mitchell did follow a comparable methodology except for the application of the PSA deduction, and all information necessary to provide a sound opinion on the ACV of Plaintiff's vehicle is contained in the Report. Specifically, to determine the ACV of Plaintiffs' loss vehicles using the Mitchell Valuation reports, you add the Projected Sold Adjustment back to the adjusted price of each comparable vehicle to get a revised "Base Value," and then apply whatever adjustments, if any, were made in the reports for condition, prior damage, aftermarket parts, or refurbishment.

Absent the Projected Sold Adjustment, the Mitchell methodology provides a sound determination of ACV, consistent with the comp methodology commonly used by appraisers. So, the Mitchell report can be used to determine the ACV of Plaintiffs' loss vehicles (or any other loss vehicle) by simply backing out the Projected Sold Adjustment. To arrive at a sound appraisal of ACV using a Mitchell report, you would line-item out each Projected Sold Adjustment applied to a comp, recalculate the "Adjusted Price" of each comparable vehicle to which a Projected Sold Adjustment was applied, and then recalculate the average of the Adjusted Prices to arrive at a revised "Base Value." From there, the Market Value can be recalculated using that revised Base Value and the adjustments for condition, prior damage, aftermarket parts, or refurbishment already determined by Mitchell. This is consistent with the methodology Mitchell employs in California

as shown in the methodology summary at page 11 of the attached valuation report (PGR_AMBROSIO_0022334).

To appraise the ACV of Plaintiff Ambrosio's loss vehicle using his Mitchell report, I backed out each Projected Sold Adjustment and then recalculated the Market Value. Specifically, I added $807.00 to the $5,884.02. adjusted price of the first comp, resulting in a revised adjusted price of $6,691.02. I added $666.00 to the $5,703.54 adjusted price of the second comp, resulting in a revised adjusted price of $6,369.54. I added $761.00 to the $5,754.50 adjusted price of the third comp, resulting in a revised adjusted price of $6,515.50. I added $570.00 to the $5,759.87 adjusted price of the fourth comp, resulting in a revised adjusted price of $6,329.87. I added $808.00 to the $5,817.35 adjusted price of the fifth comp, resulting in a revised adjusted price of $6,625.35. I then took the sum of the revised adjusted prices ($32,531.28) and divided that number by five to get a recalculated Base Value of $6,506.26. This is the amount the Base Value would have been had Mitchell not applied Projected Sold Adjustments. Mitchell also applied a negative condition adjustment of $917.15, by applying a 15.857% condition adjustment percentage to the original Base Value of $5,783.86.[1] Applying that same 15.857% negative condition adjustment percentage to the recalculated Base Value results in a negative condition adjustment of $1,032.35 and a Market Value of $5,473.91 ($5,783.86 - $1,032.35), which is a sound appraisal of the ACV of Plaintiff Ambrosio's loss vehicle.

To appraise the ACV of Plaintiff Trenholm's loss vehicle using his Mitchell report, I backed out each Projected Sold Adjustment and then recalculated the Market Value. Specifically, I added $838.00 to the $11,716.46 adjusted price of the second comp,[2] resulting in a revised

---

[1] Mitchell-Ambrosio Subpoena 000937-938.
[2] No PSA was applied to comparable vehicles one and three.

adjusted price of $12,554.46. I added $730.00 to the $10,314.53 adjusted price of the fourth comp, resulting in a revised adjusted price of $11,044.53. I added $834.00 to the $12,064.40 adjusted price of the fifth comp, resulting in a revised adjusted price of $12,898.40. I added $800.00 to the $10,712.38 adjusted price of the sixth comp, resulting in a revised adjusted price of $11,512.38. I added $738.00 to the $11,946.30 adjusted price of the seventh comp, resulting in a revised adjusted price of $12,684.30. I added $762.00 to the $10,880.97 adjusted price of the eighth comp, resulting in a revised adjusted price of $11,642.97. I added $838.00 to the $11,960.31 adjusted price of the ninth comp, resulting in a revised adjusted price of $12,798.31. I added $738.00 to the $12,263.90 adjusted price of the tenth comp, resulting in a revised adjusted price of $13,001.90. I then took the sum of the revised adjusted prices ($121,138.51) and divided that number by ten to get a recalculated Base Value of $12,113.85. This is the amount the Base Value would have been had Mitchell not applied Projected Sold Adjustments. Mitchell also applied a negative condition adjustment of $577.41, by applying a 5.027% condition adjustment percentage to the original Base Value of $11,486.05. Applying that same 5.027% negative condition adjustment percentage to the recalculated Base Value results in a negative condition adjustment of $608.96, applying a $30 adjustment for aftermarket parts as well results in a Market Value of $11,534.89 ($12,113.85 - $608.96 + $30.00), which is a sound appraisal of the ACV of Plaintiff Trenholm's loss vehicle.

## V.     **Prior Testimony**

- *Volino, et al. v. Progressive Casualty Ins. Co., et al.*, No. 1:21-cv-06243-LGS
- *Drummond, et al. v. Progressive Specialty Ins. Co., et al.*, No. 21-4479
- *Freeman v. Progressive Direct Ins. Co.*, No. 1:21-cv-03798-DCC
- *Chadwick v. State Farm Mutual Automobile Ins. Co.*, No. 4:21-cv-1164-DPM
- *Wiggins, et al. v. State Farm Mutual Automobile Ins. Co., et al.*, No. 8:21-cv-03803-DCC

- *Clippinger v. State Farm Mutual Automobile Ins. Co., et al.*, No. 2:20-cv-02482-TLP-cgc
- *Costello v. Mountain Laurel Assurance Co.*, No. 2:22-cv-0035-TAV-CRW
- *Brown, et al. v. Progressive Mountain Ins. Co., et al.*, No. 3:21-cv-00175-TCB
- *Bartee, et al. v. Progressive Advanced Ins. Co., et al.*, No. 4:22-cv-00342

## VI. Compensation

I am being paid $650 per hour for my work in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 22, 2023

*Jason Merritt (Jun 22, 2023 13:40 EDT)*

Jason Merritt

# EXHIBIT 1



# Jason W. Merritt

East Coast Auto Appraisers LLC

Cumberland, Maryland 21502

301-804-0224

jason@eastcoastautoappraisers.com

**Merritt's Alignment Service**                                                                                         January 1980-Oct 1987

Authorized Maryland State Inspections mechanic. Certified and licensed to perform safety inspections for the state of Maryland. Certified in passenger cars. Light duty trucks, and light duty trailers. Certified as the youngest mechanic by the state of Maryland to perform safety inspections.

During this tenure multiple safety inspections were conducted. The Maryland State Inspection procedure is one of the most detailed and thorough state inspection process.
During this tenure I received experience and training in the mechanical aspects and systems of all motor vehicles.

**Maryland State Police**                                                                                                          Oct 1987- June 2015

October 1987- Entered the Maryland State Police as a Cadet. Served in the Commercial Vehicle Enforcement Unit. During this time, I was certified federally as a Level 1 Inspector for Commercial Vehicles. Level 1 inspections are the highest level of inspections set forth by the Federal Motor Carrier Safety Standards and are recognized at the State and Federal Level. At that same time, I received Hazard Materials Certification and training. I was the first Cadet in the state of Maryland to be certified to conduct Level 1 inspections of commercial vehicles. I conducted accident investigations of commercial vehicles. I performed more than 1000 inspections during this tenure.

August 1990- Graduated the Police Academy and was certified as Police Officer by the Maryland Police Training Commission. Was instructed and certified to conduct accident investigations. During this Academy training many hours were dedicated to Accident Investigations.

August 1990- March 1998 Assigned to Road Patrol throughout the state of Maryland. During that time, I handled numerous high-level Criminal Investigations for multiple thefts as well as assaults and fatal accidents.

March 1998- June 2015

Assigned to the Criminal Enforcement Division, Columbia, Maryland

I was assigned to the C3I Narcotics Unit. This is a multi-jurisdictional Unit that is comprised with multiple agencies and is supervised by the Maryland State Police. During this time as a Narcotics Investigator, I have received many commendations and awards for service.

I have conducted and assisted with more than 4500 investigations and conducted more than 3500 arrests. I have been the author of and assisted with more than 800 Search and Seizure Warrants.

The C3I Narcotics Unit has received numerous awards and recognitions for Outstanding Performance in Narcotics Investigations. While in this capacity I have worked with multiple agencies to include but not limited to the FBI, DEA, ATF, FDA, and Multiple Police Departments throughout Maryland, West Virginia, Virginia, California, Colorado, and Pennsylvania. I have previously been deputized federally with the DEA and the FBI on case specific investigations.

I have worked in a covert capacity for undercover investigations, and I have managed more than 1000 criminal informants as well as held caseloads of more than 30 cases at a time. I have testified for the prosecution in many Federal cases. I have been involved in many Federal Level investigations that required testimony and litigation on the state and federal levels. I have taught in the subjects of narcotics, Interview and Interrogation, Confidential Informants, Courtroom Conduct and Testimony, as well as 4th Amendment Law.

I was responsible for the maintenance and acquisition of vehicles of the unit. I was also responsible for the development and design of vehicle equipment and undercover technology used in the vehicles.

I was submitted and verified as an Expert Witness in District and Circuit Courts in the State of Maryland. I have been a witness in numerous courts throughout the state of Maryland the Federal Court system.

I have testified in many criminal and civil cases over 30 years.

Training;

Maryland State Police

Police Academy, Yearly Training to maintain my certification as a Police Officer.

Criminal Investigations

Advanced Criminal investigations.

Narcotics Investigator

DEA Investigators School

Interview and Interrogation

Criminal Informants

Numerous other Narcotics Investigators Trainings throughout the country.

Mobile Forensics Certification

Drug Diversion Training

Accident Investigation

Advance Accident Investigation

### June 2015-August 2016 Merritt's Automotive LLC
I acquired and assumed a family business in the automotive industry. I was certified through the State of Maryland for automotive safety inspections. I was again certified by the state of Maryland and the Maryland State Police to conduct Safety Inspections on Passenger Vehicles including light duty trucks, and trailers. During this time, I conducted several hundred Certified Safety inspections.

### August 2016 – June 2019   Timbrook Automotive
I joined the Timbrook Automotive Organization to assist and direct the opening of a motorcycle dealership in Winchester, VA. I assisted in the establishment of that business in the state of Virginia that included permitting licensing etc. I established an online presence and supervised all departments of the dealership from sales to service and marketing. I was responsible for management of employees as well as hiring. I was also responsible and assisted with the discipline of employees and customer relations.
I was the manager of the service department to include the overseeing of the mechanical work performed. I established and conducted several hundred appraisals for the banking industry and received training through Honda USA for safety standards as well as mechanical and technological advances. The Timbrook Automotive Group is a corporation that involves more than ten dealerships and numerous manufactures. I was called upon by many of the dealerships in the organization to conduct appraisals.

### June 2019- Present T3 Intelligence Services
I am a managing and working partner of this security and private investigation firm. I conduct investigations on all matters. Some cases are criminal, and some are civil.
I have been involved with the insurance industry and have been involved in active investigations with Insurance fraud as well as Workman's Comp fraud.
I am a licensed and certified Private Detective through the Maryland State Police. I also carry an Armed Security Firm License.
I have more than 6 employees that provide security services as well as Executive Protection details.

I have conducted and advised on several civil cases involving motor vehicle accidents. We also conduct investigations for Asset Recovery of motor vehicles and large vessels.

**April 2020- Present East Coast Auto Appraisers LLC**  www.eastcoastautoappraisers.com

Partnership Owner and operator of this business. I hold a certification through the Bureau of Certified Auto Appraisers located in Houston Texas. This certification has requirements that include classroom training as well as experience in the fields of Total Loss, Loss of Use, Depreciation Value, Actual Cash Value and Classic Values. The certification standards include the knowledge and identification of vehicles that have been damaged through accidents or the elements.
These appraisals detail any damage to the structure of a vehicle, and I am trained and experienced in the detection of repairs or current damage to frames and subframe systems of vehicles.
I have been able to combine my any years of mechanical experience with the investigative training to establish market values of all types of vehicles. Specialty experience in Umpire callings for certified vehicle appraisals.

**Certifications**
Advanced Accident Investigator
Certified as a Level 4 Motor Vehicle Safety Inspector
Hazardous Material Responder/Inspector
Certified Police Officer Maryland Police Training Commission
Maryland Certified Safety Inspector for multiple classes of motor vehicles
Maryland Certified Salesman
Private Investigator
Certified Auto Appraiser BOCAA

