**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elliot Ambrosio et. al., | No. CV-22-00342-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Progressive Preferred Insurance Company, | |
| Defendant. | |

Pending before the Court is Plaintiffs' Motion for Class Certification. (Doc. 42.) Defendant Progressive Preferred Insurance Company ("Progressive") filed a Response (Doc. 46), and Plaintiffs filed a Reply (Doc. 50). Plaintiffs also filed two Notices of Filing Supplemental Authority. (Doc. 85; 86.) After consideration of the pleadings and the relevant law, the Court finds that oral argument is not necessary. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). For the reasons laid out below the Court will deny Plaintiffs' Motion.

**I.    Background**

On May 5, 2023, Plaintiffs filed a class action lawsuit via their Second Amended Complaint (the "SAC") against Progressive alleging that Progressive "systemically" undervalued the cash value of Progressive's claimants' loss vehicles. (*See generally* Doc. 35.) Plaintiffs' SAC seeks to represent "claimants in Arizona who received a payment for the loss of a totaled vehicle from Defendants, where Defendants used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value

("ACV") of the loss vehicles." (*Id.* at 2 ¶ 1.) The SAC brought claims for breach of contract, breach of covenant of faith and fair dealing, unjust enrichment, and declaratory relief. (*Id.* at 15–18 ¶¶ 63–90.) The basic factual allegations are as follows.

Plaintiff Sierra Trenholm filed a claim with Progressive in May 2021 after she totaled her Kia Optima. (Doc. 84 at 2 ¶ 1.) WorkCenter Total Loss ("WCTL") estimated the ACV to be $10,938.64. (*Id.* ¶ 2.) Plaintiff Elliot Ambrosio filed a claim with Progressive after totaling his 2011 Chevrolet Malibu in September 2020. (*Id.* ¶ 5.) WCTL estimated that the ACV of his vehicle was $4,866.71. (*Id.* ¶ 6.) Progressive's physical damage to a vehicle policy (the "Policy") states that in the event of physical damage to a covered vehicle, Progressive will pay for the amount of the covered loss, up to the limits of liability. (*Id.* at 3 ¶10.) The Policy does not require Progressive to use any specific methodology in setting ACV, however, the Policy requires ACV to be "determined by the market value, age, and condition of the vehicle at the time the loss occurs." (Doc. 66-5 at 22; 31.) Progressive used Mitchell, and its WCTL software system to make estimates on what a totaled vehicle's ACV should be. (Doc. 46 at 7.) Although Progressive uses this system to estimate ACV, that method is not required by contract and there are at least two other alternative methodologies for providing an ACV estimate, including the National Automobile Dealers Association ("NADA") and Kelly Blue Book ("KBB"). (*Id.* at 8–9.)

Progressive, through Mitchell's ACV methodology applies a Projected Sold Adjustment ("PSA"), which Plaintiffs allege is meant to "reflect consumer purchasing behavior," or the behavior that consumers will negotiate a used car down from its listed price. (Doc. 35 at 3 ¶ 5; 35-2 at 8.) Until July 2021 the data used to calculate the Projected Sold Adjustment calculation did not include transactions where the list price was equal to the sold price, or where the sold price was greater than the listed price. (Doc. 37 at 5 ¶ 6.) Plaintiffs allege that the projected sold adjustment was applied to both Ambrosio and Trenholm's vehicles' values. (Doc. 35 at 4 ¶ 7.) Plaintiffs further allege that by concluding that consumers will negotiate down from the advertised price they, through their vendors "intentionally distort" the data to "artificially deflate the value of total loss vehicles." (*Id.*

at 4 ¶ 9.) On this basis, Plaintiffs argue that Progressive violated the Policy it has with its insureds and are bringing this action on their behalf. (*Id.* at 10.) Plaintiffs now seek certification, for the breach of contract and breach of good faith and fair dealing claims, for the class of: [1]

> "All persons who made a first-party claim on a policy of insurance issued by Progressive Preferred Insurance Company or Progressive Advanced Insurance Company to an Arizona resident where the claim was submitted from March 4, 2016, through the date an order granting class certification is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle."

(Doc. 42 at 2.)

## II. Legal Standard

Class actions are governed by Federal Rule of Civil Procedure 23, which provides as follows:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

---

[1] While not entirely clear, the Court presumes this is the request Plaintiffs' because they are the only two claims discussed in their motion and unjust enrichment claims are generally not appropriate for class certification.

- 3 -

>（2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>>(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(a)–(b). Plaintiffs seeking class certification must show that they have met the requirements of the four subsections in Rule 23(a) and at least one subsection of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)). When considering class certification, courts must engage in "a rigorous analysis." *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Overall, district courts retain broad discretion to certify a class, so long as the discretion is exercised within the framework of Rule 23. *Zinser*, 253 F.3d at 1186.

The party seeking class certification carries the burden of proving the facts necessary to establish that the prerequisites for certification are met by a preponderance of the evidence. *Olean Wholesale Grocery Coop., Inc., v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022). "Failure to meet any one of the requirements set forth in Rule 23 precludes class certification." *Miller v. Am. Standard Ins. Co. of Wis.*, 759 F. Supp. 2d 1144, 1146 (D. Ariz. 2010).

## III. DISCUSSION

### A. Scope of the Class

The scope of the proposed class also acts as a threshold inquiry to class certification.

Some district courts in the Ninth Circuit have rejected attempts to amend a class definition at the certification stage without a plaintiff requesting leave to amend their complaint. *See, e.g.*, *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 597 (S.D. Cal. 2014) ("[T]he Court is bound by the class definition provided in the Complaint."); *see also Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it."). However, other courts in the Ninth Circuit take a more nuanced approach. These courts entertain certification of a class other than that described in the complaint if the proposed modifications to the class definition are minor, require no additional discovery, and cause no prejudice to defendants. *See Davis v. AT&T Corp.*, No. 15CV2342-DMS (DHB), 2017 WL 1155350, at *2 (S.D. Cal. Mar. 28, 2017). Additionally, some courts will allow more than minor modifications to a class definition "if it is narrower than the class alleged in the complaint." *Id.*; *see also Gold v. Lumber Liquidators Inc.*, No. 14-CV-05373-THE, 2017 WL 2688077, at *3–4 (N.D. Cal. June 22, 2017). In their SAC Plaintiff's proposed the following class:

> "All persons who made a first-party claim on a policy of insurance issued by Progressive to an Arizona resident who, from the earliest allowable time through the date of resolution of this action, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the ACV was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine ACV."

(Doc. 35 at 12 ¶ 53.) Plaintiffs now, via the new class definition, seek mainly to narrow the class to policy holders affected within a set period of dates. (Doc. 42 at 2.) Here, the proposed change to the class definition is minor and will not prejudice Defendants in any way. Therefore, the Court finds the proposed class suitable.

### B. Definite and Ascertainable

Rule 23 contains a threshold requirement that the class be adequately definite and ascertainable. *Gustafson v. Goodman Mfg. Co.*, No. CV-13-08274-PCT-JAT, 2016 WL 1029333, at *6 (D. Ariz. Mar. 14, 2016). A class is properly defined if membership can be

- 5 -

1 determined from objective, rather than subjective, criteria. *See Walter v. Leprino Foods Co.*, 670 F. Supp. 3d 1035 (E.D. Cal. 2023) Here, Progressive argues that the class is not ascertainable because it would "require resolving labor-intensive individualized questions." (Doc. 46 at 36.) Progressive also asserts that Plaintiffs do not propose a method to determine which policy holders are not part of the class due to waiver, different reporting, non-payment due to coverage denial, negotiations, or other events. (*Id.*) Plaintiffs counter that the class is ascertainable because, based on expert opinion, "[e]very criterion for membership—insured by Progressive, date of loss, whether [the loss] was a covered claim, whether [the claim] was based on a Mitchell Report, and whether a PSA was applied" can objectively be pulled from Progressive's records. (Doc. 42 at 11.) The Court agrees. Additionally, the Court is not persuaded by Progressive's argument that because compiling the data would be burdensome, the class is unascertainable. (Doc. 46 at 36.) Like other district courts in similar cases have found, the Court agrees that "Progressive's own recordkeeping choices might increase [its] own burden in discovery, but that is no reason to deny class certification." *Schroeder v. Progressive Paloverde Ins. Co.*, 1:22-cv-00946-JMS-MKK, 2024 WL 308330, at *7 (S.D. Ind. Jan. 26, 2024) (quoting *Volino v. Progressive Cas. Ins. Co.*, 21 Civ. 6243 (LGS), 2023 WL 2532836, at *10 n.1 (S.D.N.Y. Mar. 16, 2023).

Therefore, because the class is specific and based on objective criteria, the Court finds the class is sufficiently definite and ascertainable.

**D.    Rule 23(a) Requirements**

**1.    Numerosity**

Rule 23 requires that the class be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). A proposed class of at least forty members presumptively satisfies the numerosity requirement. *Mix v. Asurion Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *8 (D. Ariz. Dec. 14, 2016); *see also Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 365 (D. Ariz. 2009). Here, Plaintiffs propose a class with at least 22,000 members. (Doc. 42 at 22.) Accordingly, the Court find the numerosity requirement is

satisfied.

### 2. Commonality

Rule 23 requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This analysis requires a plaintiff to demonstrate that class members have suffered the same injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 350. A plaintiff need only present "a single common question of law or fact that resolves a central issue." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020). Satisfying this requirement is a "'relatively light burden' that 'does not require that all the questions of law and fact raised by the dispute be common . . . or that the common questions of law or fact predominate over individual issues.'" *Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2019 WL 2372447, at *2 (N.D. Cal. June 6, 2019) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009)).

Here, Defendants argue that Plaintiffs' designated class lacks a common injury because liability turns on the valuation of individualized cars. (Doc. 46 at 18.) In making this argument, Defendants rely heavily on *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134 (9th Cir. 2022). In *Lara*, plaintiffs challenged valuations by invoking a Washington state law that required insurers to itemize deductions or additions they wanted to make to the proposed valuation and alleging breach of contract. *Id.* at 1137. Plaintiffs alleged that by failing to meet this disclosure, these insurers breached their contracts, engaged in unfair trade practices, and engaged in civil conspiracy. *Id.* However, Plaintiffs did not present evidence that they suffered an injury, nor did they offer a way to calculate injury for the class. *Id.* at 1139. The Ninth Circuit held that because the claims would require *each* individual plaintiff to show that they received less than the ACV, it was inappropriate to certify the class under Rule 23(a)'s commonality requirement. *Id.* at 1140.

However, unlike in *Lara*, Plaintiffs here have offered evidence for the Court to

determine wither Defendants' use of PSA led to the injury of being paid something other than the pre-accident cash value of their totaled vehicles as required by the Policy. *See Coleman v. United Servs. Auto. Ass'n*, No. 21-CV-217-RSH-KSC, 2023 WL 9110926 (S.D. Cal. Dec. 22, 2023) ("*Lara* is distinguishable from this case. Not only did the plaintiffs in *Lara* not have any expert or model by which to determine injury classwide, but the nature of the plaintiffs' claims also required discerning the actual value of an already totaled vehicle for each potential class member to determine if the respective class member was injured."). Here, Plaintiffs possess and plan on presenting various expert testimony regarding data that Progressive excludes certain data to reach ACV, and empirical list/sell data discounting the use of a PSA for valuation. (Doc. 42 at 16.) This is enough to allege common injury—that class wide PSA use led to devalued ACVs—for Rule 23(a) purposes.

Although like the *Volino* court, the Court here too recognizes that not all class members will have identical facts, it does find that "the legitimacy of PSAs as a means of calculating ACV" is a question common to the class—which is enough for Plaintiffs to meet the relatively light burden under Rule 23(a)'s commonality requirement. *Drummond v. Progressive Specialty Ins. Co.*, Civil Action No. 21-4479, 2023 WL 5181596, at *9 (E.D. Pa. Aug. 11, 2023); *see also Schroeder*, 2024 WL 308330, at *9 ("The issue [plaintiff] presents in this case – whether using the PSA to determine ACV violates the Policy – is common to all class members."). Accordingly, the Court finds Plaintiffs satisfy Rule 23(a)'s commonality requirement.

### 3. Typicality

Rule 23 also requires that the claims or defenses of the representative parties are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement focuses on the class representative's claim to ensure that the interest of the class representative "aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Representative claims need to be reasonably coextensive with those of absent class members. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Courts must determine "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Lastly, this requirement "is not primarily concerned with whether each person in a proposed class suffers the same type of damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017). Plaintiffs argue typicality is satisfied because their injury is a result of Progressive's uniform practices impacting them as well as other class members. (Doc. 42 at 23.) Defendants argue that Plaintiffs Ambrosio and Trenholm are atypical from other class members for several reasons. (Doc. 46 at 33.)

First, Defendants first argue that Plaintiff Ambrosio is an atypical Plaintiff because he lacks standing. (Doc. 46 at 34.) As to standing, Defendants note that Plaintiff Ambrosio cannot be a typical plaintiff because it is not him who has an interest in the Policy, but rather his bankruptcy estate—and therefore argue he is unable to bring suit. (*See* Doc. 46 at 33.) Relevant here, Plaintiff Ambrosio declared Chapter 13 bankruptcy in 2018, before this lawsuit commenced, where he listed the insured Malibu as an asset. (*Id.*) He filed a claim for his totaled Malibu in September 2020, during the pendency of the bankruptcy. (*Id.*) He alleges he converted the bankruptcy from Chapter 13 to Chapter 7 on May 5, 2021. (Doc. 46-24 at 27.) Defendant argues that under the United States Bankruptcy Code, property interests existing before or during a bankruptcy become property of the bankruptcy estate, and therefore Plaintiff Ambrosio is unable to maintain this action as he has no interest in the Malibu. (Doc. 46 at 33.); 11 U.S.C. § 541(a)(l), (6), (7). Plaintiffs assert that because Plaintiff Ambrosio's claim arose *after* he filed his Chapter 13 bankruptcy, but before he converted it into a Chapter 7 bankruptcy, his claim is not property of the bankruptcy estate. (Doc. 50 at 18.) The Court agrees.

Under the Bankruptcy Code, only the debtor's property at the time of the original bankruptcy filing becomes part of the converted estate. *See* 11 U.S.C. § 348(f)(1)(a))

("[P]roperty of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."); *see also Harris v. Viegelahn*, 575 U.S. 510, 517 (2015) (recognizing that Congress amended the Bankruptcy Code so that "in a case converted from Chapter 13, a debtor's postpetition earnings and acquisitions do not become part of the new Chapter 7 estate") In other words, because Plaintiff Ambrosio's interest *in this litigation*—the totaling of his Malibu and invocation under the Policy—arose after the date of filing for Chapter 13 bankruptcy, his interest in said litigation and respective remedy remains.

Second, Defendants argue that Plaintiff Ambrosio is judicially estopped from bringing these claims because he did not disclose his claim against Progressive to the bankruptcy court when converting to a Chapter 7 bankruptcy in 2021. (Doc. 46 at 34.; Doc. 46-24 at 28.); *See Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013) ("If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action."). Plaintiffs do not address the estoppel argument, however, the Court also finds it unpersuasive as to Plaintiff Ambrosio's typicality as a class member. As explained above, Plaintiff Ambrosio's claim with Progressive, the beginning of any interest he had in a lawsuit, is not the bankruptcy estate's property. Because his interest in this litigation did not accrue until his Malibu was totaled, which was *before* he converted to a Chapter 7, the Court does not find that he omitted any claims subject to that bankruptcy. Therefore, the Court finds that Plaintiff Ambrosio is not judicially estopped from bringing these claims. As explained above, he also has standing. Therefore, because he suffered a similar injury by similar conduct as other class members, the Court finds Plaintiff Ambrosio satisfies Rule 23(a)'s typicality requirement.

As to Plaintiff Trenholm, Defendants argue that she is atypical because she cannot establish that she was underpaid the ACV of her vehicle due to Progressive valuing her vehicle higher than what she had paid for it. (Doc. 46 at 35.) As Plaintiffs point out, what

she paid for the vehicle does not matter, as the injury is based on whether the PSA reduced what she otherwise should have been awarded under the Policy *at the time of loss*. (Doc. 50 at 19.) Whether the used car market at the time of loss has a higher payout than at the time of purchase does not impact the typicality inquiry, as Plaintiff Trenholm still is a party to the typical Policy, and her claim was still subject to the PSA at issue here.

Accordingly, the Court finds both Plaintiff Ambrosio and Plaintiff Trenholm satisfy Rule (23)(a)'s typicality requirement.

### 4. Adequacy

The final requirement of Rule 23(a) is that the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is satisfied if the named representatives appear 'able to prosecute the action vigorously through qualified counsel' and if the representatives have no 'antagonistic or conflicting interests with the unnamed members of the class.'" *Winkler v. DET, Inc.*, 205 F.R.D. 235, 242 (D. Ariz. 2001) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Plaintiffs assert that they can fairly and adequately represent the interests of the class. Defendants counter that because both named Plaintiffs benefitted from the ACV calculation there is a "fundamental conflict of interest" among class members, and therefore they are inadequate to represent the class. *See Prudhomme v. Gov't Emps. Ins. Co.*, No. 21-30157, 2022 WL 510171, at *1 (5th Cir. 2022) (per curiam) (finding that where certain class members "received payments above . . . the allegedly unlawful violation" they were inadequate to represent the class). Although it is true that both Plaintiff Ambrosio and Plaintiff Trenholm received a benefit from the ACV calculation, both benefits were unrelated to the use of the PSA, which as Plaintiffs note uniformly reduced the ACV for claims where it was used. (Doc 45-8. at 24–25.) Unlike in *Prudhomme*, where some plaintiffs would have owed money had the class prevailed on its theory, here, even Ambrosio and Trenholm would benefit because they allege they would have received a higher payout had the PSA not been used—which is the crux of their claims. *Id.*

Defendants also argue that Plaintiff Ambrosio and Plaintiff Trenholm are inadequate to represent the class because they are focusing their theory only on the PSA and not the other elements of WCTL'S valuation methodology. (Doc. 46 at 32.) They argue this inadvertently may lead to other class members' claims being waived in the future. (*Id.*) The Court finds this unpersuasive. Pursuing a class liability theory on the PSA is a strategic choice, which the Court is not in the business of assessing. *See also Volino*, 2023 WL 2532836, at *11 (quoting *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16 Civ. 740, 2020 WL 4694172, at *7 (S.D.N.Y. Aug. 13, 2020) (finding a similar argument "unpersuasive because 'the marginal value of any waived claims appears to be relatively low,' while 'the strategic value of pursuing claims on behalf of a . . . class is substantial'"))). Therefore, the Court finds that Plaintiffs will adequately represent the class.

Given the above analysis, Plaintiffs have satisfied the requirements of Rule 23(a).

### E. Rule 23(b)

Having determined that Plaintiffs have satisfied the requirements of Rule 23(a), the Court now turns Rule 23(b). *See Zinser*, 253 F.3d at 1186. Plaintiffs must satisfy at least one of the Rule 23(b) requirements to achieve class certification. *Id.* For the reasons explained below, the Court finds that Plaintiffs have not made this showing.

#### 1. Predominance

Here, Plaintiffs rely on Rule 23(b)(3)—predominance. Fed. R. Civ. P. 23(b)(3). This subsection requires that "the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both predominance and superiority must be shown for certification.

A predominance analysis is similar to the commonality analysis under Rule 23(a), only more demanding. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (explaining that Rule 23(b) requires courts to take a "close look" at a case before accepting certification). The predominance

inquiry "tests whether proposed classes are *sufficiently cohesive* to warrant adjudication by representation" and examines whether there is a common question or instead more individualized questions. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Products, Inc.*, 521 U.S. at 623 (emphasis added)).

> An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.

*Id.* (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012)). Once a common question has been identified, like the Court here did above, it must ask whether that common question is more prevalent than individual questions. *Id.*

Plaintiffs argue that the common issues clearly predominate over any individual issues and that the calculation of damages will not overwhelm questions common to the class. (Doc. 42 at 14.) Progressive argues that individualized issues predominate because, PSA aside, determining whether a Plaintiff was paid below ACV turns on individual car valuations. (Doc. 46 at 18.) Although the Court found Progressive's arguments inadequate to defeat Plaintiffs' initial lower burden for showing a common question, it finds them adequate to defeat Plaintiffs' showing under the higher predominance standard. In other words, this case is not "sufficiently cohesive" to warrant class certification. *Amchem Products, Inc.*, 521 U.S. at 615.

As the Court addressed above, the crux of the issue here is whether Progressive breached its obligation under the Policy to pay out the ACV of total vehicles by applying a PSA. From the record here, the PSA is only part of one method of ACV calculations. There are at least two other ways of estimating ACV —NADA and KBB — both of which Progressive could have used to calculate Plaintiffs' ACV under the Policy, as Progressive is not bound to use any one ACV methodology. As Progressive notes, these other two sources have, in some circumstances, returned with the same or a lower ACV estimate than Mitchell's estimate which included a PSA. (Doc. 46 at 21, 35.) This alone makes determining whether Plaintiffs were paid less than ACV difficult to determine on a class

wide basis. It would require the Court, and a jury, to look at not just the Mitchell valuation, but also several other valuations to determine whether *each individual Plaintiff* was paid below market.

Additionally, the valuation issue stems not only from the lack of uniformity in *how* ACV is determined, but also in the lack of uniformity on *what factors* into this determination. Although Plaintiffs have offered evidence on how a valuation can be calculated, the undertaking of these individual calculations overwhelms the common question of whether a PSA was in breach of the Policy. As Progressive notes, each individual car has individual features which require different valuation adjustments. (Doc. 46 at 16.) From vehicle mileage and equipment to engine quality and window tint—there appear to be an unmitigated number of factors that can go into reaching an ACV. (*Id.* at 16–17.) So, although *one adjustment* (the PSA) from *one methodology* (Mitchell) was applied across the proposed class, "other compensating adjustments and the ultimate valuation are made individually. And it's those other things that would require more individualized inquiries" than common inquires here. *Lara*, 25 F.4th at 1140. The Court agrees with Progressive that this step would turn the common question of whether using a PSA violated the Policy into "thousands of mini trials" surrounding valuation. (Doc. 46 at 35.)

Further, even if Plaintiffs established the PSA was a policy violation, Progressive would still be entitled to present individualized evidence that it did not breach any one Plaintiff's contract. *See, e.g.*, *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (affirming denial of certification where plaintiff was "subject to unique defenses"). Therefore, even if Plaintiffs established that a PSA should not have been applied under the Mitchell method, Progressive would still be entitled to show that despite the PSA deduction, a plaintiff was still paid their vehicle's correct ACV. *Ellis*, 657 F.3d at 985 (vacating certification order where district court did not consider individualized defenses).

Therefore, the Court finds that Plaintiffs do not satisfy the Rule 23 (b) predominance requirement, making the class inappropriate for certification.

### 2. Superiority

Because the Court finds Plaintiffs do not satisfy the Rule 23 (b) predominance inquiry, it need not reach the superiority factors.

### V. CONCLUSION

Accordingly,

**IT IS ORDERED denying** Plaintiffs' Motion for Class Certification (Doc. 42).

Dated this 1st day of March, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge